IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JASON ASHFIELD,                    : Civ. No. 1:22-CV-1369
                                   :
       Plaintiff,                  :
                                   :
       v.                          :
                                   : (Chief Magistrate Judge Bloom)
SCHUYLKILL COUNTY, et al.,         :
                                   :
       Defendants.                 :

MEMORANDUM OPINION

## I.   Introduction

This case comes before us on a motion for summary judgment filed

by several defendants—Schuylkill County, Schuylkill County Prison

("SCP"), Schuylkill County Prison Board ("SCPB"), David Wapinsky, and

Michael Buchanan.[1]  Ashfield asserts a claim of deliberate indifference

to his medical needs under 42 U.S.C. § 1983, and related state law claims

arising out of an altercation that occurred while he was detained at SCP

in September of 2020.[2]  He also brings Section 1983 claims under a theory

of municipal liability and a failure to protect, intervene, and train and

---

[1] Doc. 50.
[2] Doc. 42.

supervise the SCP staff.[3] Ashfield further asserts claims against various correctional officer defendants, who he claims used excessive force against him during the encounter at SCP.[4]

The defendants filed the instant motion for summary judgment.[5] After consideration, the motion for summary judgment will be granted in part and denied in part.

## II.   <u>Background</u>[6]

Ashfield was incarcerated at SCP on September 2, 2020, after he was arrested on an outstanding bench warrant regarding the nonpayment of child support.  On September 4, 2020, after his initial check by medical, Ashfield requested a shower and a telephone call. Correctional Officer Kayes denied Ashfield's request and escorted him back to his cell.  According to the defendants, Ashfield resisted Kayes' escort commands by pushing back into him, which Ashfield denies.

---

[3] *Id.*
[4] *Id.*
[5] Doc. 50.
[6] The factual background of this Memorandum Opinion is taken from the parties' submissions to the extent those submissions are consistent with the evidence in the record.  (Docs. 50-52, 60-64).

Kayes then performed a leg sweep to gain control over Ashfield, which caused him to fall to the ground.

At this point, Correctional Officer Parker stepped in to assist Kayes in restraining Ashfield.  Kayes and Parker ordered Ashfield to cuff-up, but he continued to combat their efforts to gain control over him. Correctional Officer Rauco witnessed the incident and issued an all-guards call.  Correctional Officers Nitolo, Swatt, Broomall, Menne, Kruss, Rodriguez, and Lieutenant Escalante responded and assisted in restraining Ashfield.  Parker, Swatt, Rodriguez, and Escalante each reported that they secured Ashfield's arm so they could cuff Ashfield's right wrist.  Nitolo reported that she restrained Ashfield's legs and feet. Ashfield was double cuffed and escorted to medical.

Ashfield was treated by non-party medical staff, who noted a laceration to the bottom lip; deformity and swelling in the left shoulder; swelling in the right shoulder; swelling, deformity, and decreased range of motion in the left elbow; and a bleeding and swollen nose.  A Certified Registered Nurse Practitioner ordered a shoulder, face, and elbow X-ray, Ibuprofen, and an ice pack.  Prior to Ashfield receiving x-rays, he was released from SCP by court order.  He sought and received medical

treatment at Lehigh Valley Health-Hazelton Emergency.  Ashfield alleges that he sustained a broken nose, injuries to his clavicle and shoulders, and permanent injuries to his neck and acromioclavicular joint from the incident with SCP staff.[7]

Ashfield initially brought this action against the defendants on September 4, 2022.[8]  Ashfield's second amended complaint asserts his claims pursuant to Section 1983, alleging that this incident and the injuries he suffered amounted to a violation of his constitutional rights. With respect to the moving institutional and supervisory defendants, Ashfield brings a claim for deliberate indifference to his serious medical needs and a *Monell*[9] claim, alleging a failure to protect, intervene, and train and supervise the correctional officers.  Ashfield further asserts a claim of civil conspiracy to violate his federal and state civil rights against these defendants.

The defendants moved for summary judgment, arguing that there is no genuine dispute of material fact, and Ashfield's claims fail as a

---

[7] Doc 42.

[8] Doc. 1.

[9] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

matter of law.[10]  The motion also asserts that the correctional officer defendants should be dismissed because they were never properly served with the second amended complaint.[11]

After consideration of the record, we conclude that there are no genuine disputes of material fact, and Ashfield's claims against the supervisory and institutional defendants fail.  Accordingly, we will grant summary judgment as to these defendants.  However, we will deny the motion with respect to the correctional officer defendants and, as discussed in more detail below, will direct that these defendants waive service and answer the second amended complaint.

## III.    Discussion

### A. Motion for Summary Judgment – Standard of Review

The defendants have filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Rule 56(a) provides that a court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[12]  The materiality of

---

[10] Doc. 84.

[11] *Id.*

[12] Fed. R. Civ. P. 56(a).

the facts will depend on the substantive law.[13]  Thus, "[o]nly disputes over facts that might affect the outcome of the suit under governing law" will preclude summary judgment.[14]  A dispute is only genuine if a reasonable juror could find in favor of the nonmoving party.[15]

The moving party bears the initial burden to "demonstrate the absence of a genuine issue of material fact," relying on pleadings, depositions, affidavits, and other evidence in the record.[16]  If the movant "successfully points to evidence of all of the facts needed to decide the case on the law," the nonmovant can still defeat summary judgment by pointing to evidence in the record which creates a genuine dispute of material fact and from which a jury could find in its favor.[17]  However, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[18]  A court may not make credibility

---

[13] *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

[14] *Id.*

[15] *Id.*

[16] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[17] *El v. Southeastern Pennsylvania Transp. Auth. (SEPTA)*, 479 F.3d 232, 238 (3d Cir. 2007).

[18] *Anderson*, 477 U.S. at 249–50 (citations omitted).

determinations or weigh the evidence, but "must view the facts in the light most favorable to the non-moving party."[19]

## B. The Defendants' Motion for Summary Judgment Will be Granted in Part and Denied in Part.

As we will discuss, we will deny the motion as to the correctional officer defendants and direct that these defendants waive service and answer the second amended complaint. However, we conclude that there are no genuine issues of material fact with respect to Ashfield's claims against the moving defendants. Accordingly, we will grant summary judgment as to those defendants.

### 1. Failure to Serve the Correctional Officer Defendants.

Ashfield's second amended complaint names Correctional Officers Escalante, Kayes, Swatt, Broomall, Menne, Parker, Kruss, Rodriguez, and Nitolo.[20] The moving defendants argue the correctional officer defendants should be dismissed for lack of personal jurisdiction because Ashfield failed to properly serve them.[21] Ashfield contends that defense

---

[19] *Hugh v. Butler Cnty. Fam. YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).
[20] *See* Doc. 42.
[21] Doc. 52 at 5.

counsel agreed, in writing, to accept and waive service on behalf of these defendants.[22]

We conclude that, as a technical matter, Ashfield failed to follow the proper procedure when requesting a waiver of service for these defendants.[23] However, because "the defense of improper service involves a matter in abatement and does not go to the merits of the action, . . . [it] is improperly brought by a motion for summary judgment under Rule 56."[24] Moreover, district courts are given broad discretion when process has not been properly served.[25] Under the present circumstances, we find it would be improper to dismiss the correctional officer defendants at this juncture.

---

[22] Doc. 63 at 12.

[23] *See* Fed. R. Civ. P. 4(d)(1); *Warren v. Baker*, No. 07-CV-0188, 2007 WL 3033871, at *4 (M.D. Pa. Oct. 16, 2007), *aff'd*, 349 F. App'x 725 (3d Cir. 2009) ("Merely mailing a request for a waiver does not itself effect proper service."). We are further constrained to note defense counsel's explicit assertion to the plaintiff's counsel that he was approved to represent these defendants, that he would sign a waiver of service and appear on their behalf, and that he would accept service via email and mail. *See* Doc. 60-1 at 38-39.

[24] *United States v. Marple Cmty. Rec., Inc.*, 335 F. Supp. 95, 101 (E.D. Pa. 1971).

[25] *Umbenhauer v. Woog*, 969 F.2d 25, 30 (3d Cir. 1992).

We further find that it is more expeditious to *sua sponte* direct these defendants to waive service under Rule 4(d)—or show good cause for failure to waive service pursuant to Rule 4(d)(2)—than to require Ashfield to effectuate proper service. The purpose of Rule 4(d) is to "avoid unnecessary expenses of serving the summons."[26] Because counsel has already indicated he would appear on behalf of the correctional officer defendants,[27] the expense of properly serving summonses would likely be unnecessary. In similar circumstances, other courts in the Third Circuit have either requested or directed defendants to waive service of process.[28] Therefore, we will deny the moving defendants' motion for summary judgment for failure to serve and direct the correctional officer defendants to waive service under Rule 4(d).

---

[26] Fed. R. Civ. P. 4(d)(1).

[27] We recognize this is dependent upon which "Rodriguez" the plaintiff intended to bring this action against. *See* Doc. 60-1 at 38-39.

[28] *Carter v. Phelps*, No. 15-CV-1203-SLR, 2016 WL 1039462, at *3 (D. Del. Mar. 15, 2016) (directing the Delaware Department of Corrections and Delaware Department of Justice to waive service of process where the plaintiff was proceeding *pro se*); *Martin v. Sec'y of Corr.*, No. 3:16-CV-2060, 2016 WL 6661156, at *1 (M.D. Pa. Nov. 9, 2016), *aff'd*, No. 21-1522, 2022 WL 1576758 (3d Cir. May 19, 2022) (specially appointing the Clerk of Court to serve, among other things, a Request to Waive Service of Summons (form AO 398) form on the defendant).

## 2. Claims against SCP and Schuylkill County

The plaintiff's opposition brief concedes that SCP is not an entity that can be sued under Section 1983.[29]  Additionally, while the plaintiff continues to pursue his *Monell* claims against SCPB and the individual supervisory defendants, he concedes that "the record does not support a *Monell* claim against Defendant Schuylkill County."[30]  Accordingly, the claims against SCP and Schuylkill County will be dismissed.

## 3. Medical Deliberate Indifference

The amended complaint alleges that the defendants were deliberately indifferent to Ashfield's medical needs.  Ashfield asserts that the defendants knew he was injured and needed medical attention but chose to release him to obtain medical treatment at his own expense.  At the outset, we note that while Ashfield was a pretrial detainee at the time of the events in the complaint, and the Supreme Court has held that pretrial detainee claims fall under the Fourteenth rather than the Eighth Amendment, courts in this circuit have continued to apply Eighth

---

[29] Doc. 63 at 13.
[30] *Id.* at 16.

Amendment standards in the context of medical care provided to pretrial detainees.[31]

Ashfield faces a high burden to show that these defendants violated the Eighth Amendment by exhibiting deliberate indifference to his medical needs. The Eighth Amendment protects inmates from "cruel and unusual punishment."[32] Prison officials have a duty to provide inmates with "adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"[33] To be liable for an Eighth Amendment violation, prison officials must have "a sufficiently culpable state of mind,"[34] which, in the prison context, is one of "'deliberate indifference' to inmate health and safety."[35]

In the medical context, an inmate alleging an Eighth Amendment violation must demonstrate that prison officials were deliberately indifferent to a serious medical need.[36] Accordingly, an inmate asserting

---

[31] *See Evans v. Columbia Cnty.*, 711 F. Supp. 3d 256, 275 (M.D. Pa. 2024) (collecting cases).

[32] U.S. Const. amend. VIII.

[33] *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)).

[34] *Farmer*, 511 U.S. at 834.

[35] *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001) (citation omitted).

[36] *Estelle v. Gamble*, 429 U.S. 97, 105 (1976).

a claim of deliberate indifference must establish that he had a serious medical need, and that prison officials, by affirmative acts or omissions, were deliberately indifferent to that serious medical need.[37]  Deliberate indifference in this context can be shown by a failure to provide care, the delay of medical care for non-medical reasons, or denial of reasonable requests for treatment.[38]  However, mere disagreement over a course of treatment does not amount to deliberate indifference.[39]  Further, non-medical correctional staff cannot be deemed to be deliberately indifferent "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner."[40]

Here, we cannot conclude that the moving defendants were deliberately indifferent to Ashfield's serious medical needs.  Ashfield claims that, rather than get him help for his medical issues, the defendants released him.  This characterization completely overlooks the undisputed fact that immediately after the underlying altercation, Ashfield was taken to the medical department and treated by medical

---

[37] *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

[38] *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993).

[39] *James v. Pa. Dep't of Corr.*, 230 F. App'x 195, 197 (3d Cir. 2007).

[40] *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004).

staff.  Further, with respect to his assertion that the defendants "fast track[ed]" his release "so he could receive medical treatment at his own expense,"[41] it is undisputed that Ashfield was released by court order.[42] Further, in his response to the defendants' statement of material facts, Ashfield conceded that that neither the Warden or Deputy Warden personally acted to deny Ashfield medical treatment.[43]

Given these undisputed facts, we cannot conclude that the individual moving defendants, non-medical correctional officials, were deliberately indifferent to Ashfield's serious medical needs.  As we have noted, it is well settled that non-medical correctional staff cannot be deemed to be deliberately indifferent "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner."[44]  Here, Ashfield was seen by medical staff who addressed his injuries but he was released by court order that same day.  There is no evidence that the moving defendants had reason to believe, or actual knowledge, that medical staff were not properly

---

[41] Doc. 63 at 5.

[42] Doc. 60, Ex. 1.

[43] Doc. 51 ¶¶ 11-18; Doc. 60 ¶¶ 11-18.

[44] *Spruill*, 372 F.3d at 236.

treating Ashfield and thus, were deliberately indifferent to his serious medical needs.

Nor can we conclude that releasing Ashfield constitutes deliberate indifference to a serious medical need. As we have explained, the correctional officers took Ashfield to the medical department immediately after the altercation and he was treated for his sustained injuries. Further, Ashfield proffered evidence establishing his release resulted simply from a court order stemming from the fulfillment of his financial obligations. Accordingly, we cannot conclude that Ashfield's release constituted deliberate indifference to his medical needs. Thus, Ashfield's medical deliberate indifference claims fail as to the moving defendants.[45]

---

[45] To the extent Ashfield brings his conspiracy claim against these defendants based on these assertions, such a claim fails, as the plaintiff has conceded these individual defendants were not present nor had knowledge of the alleged excessive force incident, and we have concluded that these defendants were not deliberately indifferent to his medical needs. Further, to the extent this claim is brought against SCPB, it is well settled that "allegations that an entity conspired with its employees fails to meet the first requirement of a civil conspiracy." *Houser v. Feldman*, 600 F. Supp. 3d 550, 570 (E.D. Pa. 2022). Accordingly, any conspiracy claim against SCPB fails.

### 4. *Monell* Claims

Ashfield's complaint also asserts *Monell* claims against SCPB, Warden Wapinsky, and Deputy Warden Buchanan.  A municipal entity may be liable for a constitutional violation under Section 1983 if the violation was a direct result of the entity's policy, custom or practice.[46] However, an entity may not be held liable "solely because injuries were inflicted by its agents or employees."[47]   Rather, a plaintiff must demonstrate a "direct causal link" between the alleged constitutional violation and the municipal policy or custom.[48]  A plaintiff may show that either an official policy of the municipality was the moving force behind the violation, or that the municipality had an informal custom such that it operated as the municipality's policy.[49]  In either scenario, the plaintiff has the burden to show that the policy or custom was implemented by or acquiesced to by a policymaker.[50]

---

[46] *Monell*, 436 U.S. at 695.
[47] *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 249 (3d Cir. 2007).
[48] *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989).
[49] *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986); *Monell*, 436 U.S. at 690.
[50] *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990).

To state a failure to protect claim, the plaintiff must show "(1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm."[51]   Deliberate indifference under this standard requires a prison official to "have known or been aware of the excessive risk to inmate safety."[52]  Additionally, a supervisor may be held liable for a failure to intervene to stop unconstitutional conduct when they had a reasonable opportunity to intervene and failed to do so.[53]

Further, in cases where a plaintiff is alleging a failure to train officers, the plaintiff must demonstrate that the "municipality's failure to train [] officers . . . amounts to deliberate indifference to the rights of persons with whom the police come into contact."[54]  To establish such a claim, the plaintiff must demonstrate "contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents," coupled with "circumstances under which the supervisor's

---

[51] *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012)

[52] *Id.* (quoting *Beers–Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001)).

[53] *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002).

[54] *City of Canton*, 489 U.S. at 388.

16

actions or inaction could be found to have communicated a message of approval to the offending subordinate."[55]

Finally, to establish individual supervisory liability for such claims:

> The plaintiff must identify a supervisory policy or practice that the supervisor failed to employ, and then prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure.[56]

In the instant case, Ashfield asserts a *Monell* claim and a failure to protect, intervene, and train against SCPB, Warden Wapinsky, and Deputy Warden Buchanan, alleging that 37 Pa. Code § 91.6 and the Pennsylvania Department of Corrections Policy DC-ADM 201 set forth use of force standards, which the defendants violated.  But Ashfield fails to show how these policies, which instruct on the proper use of force, were the "moving force" behind the alleged unconstitutional conduct. Additionally, Ashfield concedes that "this [is] a single incident matter

---

[55] *Montgomery v. De Simone*, 159 F.3d 120, 127 (3d Cir. 1998) (citing *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 (3d Cir. 1997)).

[56] *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 317 (3d Cir. 2014) (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)); *Brown v. Muhlenberg Twp.*, 269 F.3d 205 (3d Cir. 2001)).

where there is no record of prior similar instances,"[57] and relies solely on his own experience in this isolated case, which is insufficient to state a *Monell* claim.[58]

Additionally, liability under Section 1983 requires a plaintiff to show that the defendant had personal involvement in the alleged constitutional violation.[59] Personal involvement may be shown through allegations regarding the defendant's own conduct, or that the defendant had knowledge of the unconstitutional conduct and acquiesced in the behavior.[60] Accordingly, a supervisor cannot be held liable under Section 1983 merely because a subordinate committed a constitutional violation, as "liability cannot be predicated solely on the operation of *respondeat superior*."[61] Here, Ashfield proffered no evidence that the supervisory

---

[57] Doc. 60 at 16.

[58] *See Taylor v. Dist. Att'ys Off.*, 802 F. App'x 701, 706 (3d Cir. 2020) (granting summary judgment for the defendant where the plaintiff had "not identified any policies or customs that extended beyond his own experience underlying his claims against the City."); *see also Taylor v. Cnty. of Chester*, No. 23-CV-4031, 2023 WL 7329497, at *5 (E.D. Pa. Nov. 6, 2023) (dismissing a Monell claim premised on "allegations [that] [we]re pled in a generalized manner and appear[ed] to be predicated almost entirely on [the plaintiff's] own experiences, which are insufficient bases for a plausible Monell claim.").

[59] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207–08 (3d Cir. 1988).

[60] *Id.*

[61] *Id.* at 1207.

defendants had knowledge of the unconstitutional conduct other than the fact they permitted him to be released.  In fact, Ashfield conceded that neither the Warden or Deputy Warden were physically present or had contemporaneous knowledge of the alleged use of force incident, or that they personally acted to deny Ashfield medical treatment.[62]

Accordingly, we find that Warden Wapinsky, Deputy Warden Buchanan, and SCPB, are not liable under *Monell*, and these claims will be dismissed.

## IV.   Conclusion

For the foregoing reasons, the motion for summary judgment will be GRANTED IN PART and DENIED IN PART as follows:

1. The motion will be GRANTED with respect to the claims against SCP, SCPB, Schuylkill County, Warden Wapinsky, and Deputy Warden Buchanan; and

2. The motion will be DENIED with respect to the plaintiff's claims against the correctional officer defendants.

An appropriate order follows.

*s/ Daryl F. Bloom*
Daryl F. Bloom
Chief United States Magistrate Judge

---

[62] Doc. 51 ¶¶ 11-18; Doc. 60 ¶¶ 11-18.